The next case today is Georgia Glassie v. Paul Doucette et al., Appeal No. 21-1761. Attorney Tekenton, please introduce yourself for the board, for the record, and proceed with your argument. Good morning. May it please the Court, again, my name is Jeffrey Tekenton. I am counsel to Georgia Glassie in this appeal, the appellant. The question before the Court is whether the district court was correct when it dismissed each and every one of Georgia's claims brought in federal court, where there was properly invoked diversity jurisdiction and properly invoked federal court jurisdiction as to one of the claims. In light of that court's and the federal court's generally virtually unflagging obligation to exercise the jurisdiction that is vested in the federal courts, in light of what the Supreme Court has called the distinctly limited exception for purely probate matters, and there I'm referring to the Marshall case, of course. Before I get into the merits, I'd like to provide a little bit of flavor in terms of this case, particularly about Georgia, my client, because I think it's important for the Court's analysis of the issues that are before it. Obviously, Georgia is the daughter of Donaldson Glassie, who's the decedent and whose estate is the subject of the probate. Georgia was a child when the will was drawn up back in the 1990s. She was a young woman when Don Glassie died in early 2011. And now she's a young woman with a family of her own living out on the West Coast some 11 years later as this probate process continues. You're making a jury argument to a federal court of appeals. Could you get to the issues, please? First, specify all of your claims, and then, as to each claim, present your argument that the probate exemption does not apply. Absolutely. Thank you, Judge Lynch. I think that's the crux of where I was going, because in this case, Georgia's claims are not just as a beneficiary. I think this is a factor that really differentiates this case from many, if not all, of the probate exception cases, at least that have been briefed by the various parties to this appeal. Georgia has seven claims in this case. They are for RICO, for breach of fiduciary duty, and there are two different claims there. One of them is a breach of fiduciary duty arising out of business fiduciary obligations arising out of status as managing members of an LLC. Then there is a breach of fiduciary duty as to defendant Doucette as executor. Those are two distinct sets of fiduciary duties. Count four is a breach of contract. This is a breach of contract for an LLC operating agreement. Georgia is a minority member of the LLC of that operating agreement, the historic INS. That breach is brought against Paul Doucette and the other two appellees, but individually. Paul Doucette, although he is also executor, is one of the three managing members of this historic INS LLC. The breach of contract is brought against each of them for their violation of the operating agreement. As to that claim, you're saying it's against Doucette as a member of the LLC but not as executor. Is that correct? Yes, Judge Litch, that's correct. He was elected into that position. Count five is for negligent omission or misrepresentation. Again, those are based upon their duties as the managing members of the historic INS LLC. Count six, again, another purely corporate count, fraud by omission. It's based upon their duties to disclose arising out of their management responsibilities. Then the final count is for civil conspiracy. When we think about Marshall... Please, before you move on, which of those claims are asserted against Doucette in his capacity as executor? None of them is asserted against Paul Doucette in his capacity as executor, Your Honor. I'm sorry. You said the breach of fiduciary duty. You were making two claims as I understood it. One of those is against him as fiduciary. Yes, Your Honor. The claims, technically speaking, are brought against Mr. Doucette in his individual capacity. The relief sought is from him individually. No, you are not answering my question. I'm trying to, Your Honor. The duties that are at issue in count three, that breach of fiduciary duty claim, are the duties that he has as executor. The relief is personal. As to each of the other claims, breach of contract, negligent omission, fraud, civil conspiracy, and RICO, are those against him in his capacity, at least in part, as executor? Only, I believe, the RICO count, Your Honor, would implicate his activities as executor. And the civil conspiracy count would include his conduct that he took as an executor. I would reiterate that the relief sought and the claims are against him individually and are purely for damages. And that distinction is important because far from being a case where we're presenting purely probate claims, that's a term that's frequently used in these cases, Georgia could not, could not have brought her claims in the probate court. The appellees has devoted significant briefing to the fact that there are matters that are pending in the Newport probate court that include overlapping factual and even legal questions with some of the matters that are presented in Georgia's federal case. But I would submit that that is, it's certainly not dispositive here, but it doesn't, that doesn't present a jurisdictional problem for the federal courts. All right, let's go back. Let's take as an example the breach of fiduciary duty claim, which you say one arises out of management of an LLC. Which LLC is that, please? Historic Inns of New York. Okay. And the other is as executor. Now, as I understood it, a similar breach of fiduciary duty claim was made to the probate court. Is that correct? No, Your Honor, it's not. And for a technical reason that has significance, probate courts in the state of Rhode Island lack jurisdiction to hear claims for probate or for breach of fiduciary duty by executors and other fiduciaries. That is a, that is a, and the distinction is a claim for breach of fiduciary duty versus a petition for redress, which is for which the breach of fiduciary duty might be evidence. So, so that a claim where you're seeking relief, affirmative relief based upon a breach is exclusively within the jurisdiction of the Rhode Island Superior Court. That's why we brought it here as a, as a, as a diversity claim. All right. Thank you. That's helpful. But the issue I'd like to explore is this. that to the extent that the lower federal courts had a broad understanding that any breach of fiduciary duty claim brought against an executor fell within the probate exception, that that's, that's wrong. It's, it's just too broad. That does not mean that there cannot be breach of fiduciary duty claims that either interfere with the administration of the estate or involve assertions about the res, the property of the estate that is in front of the probate court. Your opponents say that both of these things are true, that they make a number of arguments, which they'll specify here. But partly they say, in order to ascertain whether there has been any negligent misrepresentation, fraud, conspiracy, breach of fiduciary duty, or wrongful action under RICO, you'll have to look at the value of the property. Especially as to the LLCs, both before the transaction, after the transaction, you'll have to consider whether that was authorized implicitly or explicitly by the probate court, and you'll have to consider the indemnification provisions of the LLC. And that both of those involve intervention, direct intervention in matters before the probate court, and assertions as to the value of the res before the probate court. They can make the argument more eloquently, but I understand that to be the guts of it. I'm not saying the argument is correct. I'm just trying to outline it so you can respond directly to that. Thank you, Judge Fletcher. And I think that's probably a fair statement of their position. The question that we have to analyze on a jurisdictional basis is we have to try to fit that to Marshall. Because Marshall gives us some guidance. You're right, Your Honor, that Marshall says, well, some things may not be subject to probate exception, but others might be. And how do we figure that out? Well, we go to what Marshall actually holds. And it says you need to figure out whether you're trying to probate or annul a will, and we're not, obviously. Whether you are administering an estate or whether you are exercising jurisdiction over a race within the estate. No, no, no. I think I articulated it more precisely than you did. So can you get to the merits of it? You've got two different Marshall prongs that you need to worry about. Understood. So the first is whether we're taking any action that would administer the estate. And the suggestion is that by valuing assets, some of which might be estate assets, I would point out that the corporations themselves are not. And so if we had to value, for example, historic ends as an entity to figure out the damage to Georgia's current ownership interest in that, the historic ends LLC is not an entity, is not an estate asset, nor is the synergetic real estate group. I'm sorry, but the ownership shares are estate assets, are they not? Some of them are. Some of them are. But if the court were to own... And isn't the dispute over those ownership shares of the decedent? Only in part, Your Honor. Georgia has an independent ownership interest in both historic ends and synergetic group, which we have alleged have been damaged by the various actions of each of the three defendants, including the negligent misrepresentations, the breaches of contract and so forth. And so when Georgia brings a claim for breach of contract, for example, with respect to the historic ends operating agreement, the damage she's seeking include the damages to her current ownership. That has nothing to do with the fact that the estate happens to have something in excess of 50% of the ownership. I'm sorry, I thought that the very transactions that were the object of these claims were transactions taken in the course of the administration of the estate. No, Your Honor, I think that's not accurate because, for example, the LLCs are managed by the three managing members. Those are the three defendants in this case, Your Honor. But as I said before, Defendant Doucette, who's the executor, serves in that capacity in his individual capacity. He was elected to that position. It's not something that he does in the context of his service as an executor. All right, well, we'll hear what your opponent has to say. Okay, keep going. I think time was called on me, Your Honor. All right. If we have questions, we'll get back to you. Thank you very much, Your Honor. Thank you. Thank you, sir. Please mute your audio and video. And at this time, Attorney Bush would unmute her audio and video. And is Judge LaPlante still in the meeting? I can't see him. I just want to make sure we haven't lost him. Judge LaPlante, can you... Judge LaPlante? Ms. Bush, just hang on a minute. I.T., can you please see if you can locate in the ether Judge LaPlante and get him back to us? Maybe we got him. Judge, are you back? You are muted, Judge, which is fine. I am back. Okay, great. All right. Thank you. All right. Shall we proceed? Ms. Bush, proceed, please. Thank you, Your Honor. I.T., can you confirm the stream's on? Thank you. Go ahead. Thank you. If I could start, please, where the court left off with Mr. Teckinton. Basically, what distinguishes this case from so many of the other cases that were cited is the fact that Georgia pled this case. It's a very narrow, fact-specific case. And she pled the case against Doucette expressly in his role as an executor based on all of his actions that he's taken as an executor after he was appointed by Judge Fader in the probate court in Newport. And it's also unquestionable that this estate is open. It is an active estate. It is highly contentious. And to go back to one of the answers to the court's questions with respect to the claims of fiduciary duty, Judge Lynch, you are correct. Georgia did plead claims of breach of fiduciary duty against Paul Doucette. That's included in the appendix at page 131. And in the middle of all this briefing, Judge Fader issued a decision on that, which gives life to how intertwined this case is with everything that Judge Fader's doing. So much of what Georgia complains about relates to Paul Doucette's actions, for example, with respect to mortgages, with respect to guarantees, with respect to pledges, with respect to how certain hotels are managed or not managed. All of that is the residence estate. All of that. Let me ask you about that because I'm not sure that I agree. You said he's sued as an executor. The estate is open and some of the claims of breach of fiduciary duty. Well, but I think Marshall makes pretty clear that's not a sufficient list of attributes that would trigger the exception. I agree with your honor. We are focusing largely on the second prong of the Marshall case, which relates to the administration of the estate. And the reason that we're focusing on that is, for example, if the if the federal court were to try to determine what actions Paul Doucette took with respect to this estate. Let me turn the court to a specific example. Throughout the complaint, Georgia argues about the words administration. So on paragraph 30, Georgia would have required the federal court to assess whether Paul Doucette breached a legal duty to Georgia in administering the estate by favoring some beneficiaries over others. And that runs to the RICO claim that runs to the fiduciary claim that runs for the contract claim. In paragraph 32, Georgia would have required the federal court to assess whether Doucette administered the estate in a manner that was intended to defraud Georgia and others. Georgia incorporated all of these facts by reference into all of her claims. And the reference to administration goes throughout the complaint. Paragraph 38. Let me again interject. I suppose an executive defrauds a beneficiary by saying there is this bank safe deposit box had nothing in it. And in fact, there were family jewels in it. And so clear case of fraud. Are you saying the beneficiary couldn't bring a fraud claim in court because the fraud was perpetrated by the executor regarding quote unquote administration of the estate? During the administration of the estate on these facts? Yes, Your Honor. And here's why. There is no final accounting in this case. Judge Fader has not ordered a final account until April of 2022. And so it is for Judge Fader to determine whether, for example, that safe deposit box should have been an asset of the estate or should not have been, whether it should have been empty or what it should not have been. There's no should have been empty or not. It either was or wasn't. The hypothetical I posed for you, the executor just lies as to whether the safe deposit box has anything in it. So the beneficiary goes on her way and then finds out a year or two later she'd been deceived. It's hard to believe that. That could not be brought in superior court in federal court. It goes back to timing. What we see in the case is it includes Marshall. If the executor or the administrator took those actions and, for example, emptied out that safe deposit box before the estate was opened and so diverted the funds, you saw that in the Marshall case. That was in the Jarvis case. Then those assets were never in the estate. That defrauding happened before the estate was opened. It happened outside. You're resisting the hypothetical. The assets were sitting right in the – the jewels were right in the box. Let me ask you another hypothetical. The estate owns a controlling share in a corporation, publicly traded corporation. The executor then exercises the control from those shares, defrauds the corporation, makes bad decisions for the corporation, triggers a share. Are you saying the shareholders couldn't bring a derivative action or other shareholders couldn't bring fraud claims under the Securities Act because the executor was administering an asset of the estate? I think that that's a closer call, Your Honor. The answer is no. That would be reading Marshall too broadly. Marshall is not – I'm sorry. Don't we have – don't we have that here? One of the claims is that the three fellows were controlling the LLC, and one of them happened to be executor. That's how we got part of his control, and they made bad decisions for the LLC. Why is that? For two reasons. One is that a lot of the so-called bad decisions go to mortgaging and the debts of the estate's assets, the LLC, which is held at least in part by the estate, and that is under a Rhode Island probate statute. And the other point that I would make, Your Honor, is that in the context of the decision from Judge Fader on the fiduciary duty claims that just came down, Judge Fader weighed in on what Paul Doucette was doing in managing those hotels. And so the probate judge is administering – is actively administering what is going on in the context of these estate assets. So I take it, if I'm understanding your argument correctly, you disagree rather directly with the Second Circuit's position in Lefkowitz. There are cases where Lefkowitz can be consistent with some of the First Circuit case law that we cited. It doesn't apply here, I don't think. I do disagree that it applies here. Well, Lefkowitz specifically allows a variety of counts after recognizing there would be some entanglement with the estate administration, but that it wouldn't interfere with the disposition of the res. It does, Your Honor, but here it would interfere with the disposition of the res because if Judge McElroy, for example, were put in the position of having to contradict Judge Fader – so, for example, the district judge were perhaps defined that there was a misadministration of one of the hotels where Judge Fader, three weeks ago, decided that there wasn't – that would affect the res. That would be affected. So are you saying if there is no interference with the disposition of the res, then the exception would not apply? Not necessarily, Your Honor. That would be blending the two. You answered my Lefkowitz question by saying there's a disposition of the res at issue here, but I think now you're saying even if there isn't a disposition of the res, the exception could apply, and I don't see how you reconcile that with Lefkowitz. Well, Marshall holds the two separate, Your Honor. Administration is a separate prong from disposition of the res, so I'm not holding them separate, Marshall. Fair enough. I think you're saying Lefkowitz then is wrong. I'm respectfully disagreeing, yes, Your Honor. I'm saying it doesn't guide the court here, yes. This recent decision by the state probate judge, I take it that's not in the record of the case? It's not. I was just made aware of it, Your Honor. I'm not counsel in the probate case. Is that publicly available? It is publicly available. It is a written decision from Judge Fader, yes. It was issued before the reply brief was filed. It came in late January. All right. I would like the parties to confer and provide us with a copy of that, and if there are objections to our even considering it, the parties can tell us at the time they file it. We will take any such objections under advisement, but it would be helpful to us to at least have access to it. If I understood your last reply in drawing the distinction between interference in the administration of the estate and the res, you are pursuing the line of argument that many of the decisions of the executor attacked as being fraudulent or wrongful under RICO or breach of fiduciary duty actually were subject to the approval of the probate court, and the probate court found that those actions were permissible. In part, Your Honor, yes. Certain of them were expressly permitted, and in other instances, it is still within the probate court's jurisdiction to allow them after the fact, after it considers what went on in the context of the final account. Judge Bader still has the ability, the power to say, I acknowledge what it is you say may or may not have gone on with this asset or this part of the res, and I allow it, regardless of whether you sought permission or not. One of the kind of curious things about this case, which would be a fascinating federal jurisdiction textbook case, is the difference between subject matter jurisdiction and a decision by the federal court to stay its hand to allow the pending state proceedings to be completed. I had understood that at no point did you make the argument that even if there were a jurisdiction, the federal court should stay its hand. Is that correct? That is correct, Your Honor. The way I read the case law, and I think we saw that in the Daddario case that Georgia cited, is that because a dismissal under Rule 12b-1 is without prejudice, if at some point this matures past the probate court proceedings and there remains a case, remains an actionable claim, then the time to bring it would be then. And so that's why, as I read the case law, there weren't many stays, there were just outright grants of dismissal under Rule 12b-1, because all of those are without prejudice. Ms. Bush, could you share with us your thoughts regarding the argument that I just heard from opposing counsel, that some of the breach of fiduciary claims here are alleged could not be brought in probate court under Rhode Island law, they would have to be brought in superior court? In Rhode Island superior court? Yes. There is an overlap in Rhode Island probate law, in the Rhode Island probate statute, which is Title VIII, where the probate courts can refer to the superior court certain causes of action. So superior court are the causes of equity, or the courts of equity in Rhode Island. And so arguably, certain fiduciary claims would be brought in superior court, but certainly Georgia has ignored that distinction in bringing fiduciary claims directly before Judge Fader in the first instance. Now, she has appealed those, and they're up in superior court. And so there is an overlap, Your Honor, I don't know if that's answering your question, but there's an overlap in our probate court statute. But are you saying there are no breach of fiduciary claims that have to be brought in superior court? They could all be brought in probate? Arguably, the claims should have been brought as part of a probate proceeding in the superior court, because that was the proper court, but it still would be a probate proceeding under the probate laws of Rhode Island. That's the way that the subject matter is bifurcated. And what is it that you point us to that would make clear that even in the superior court, Rhode Island regarded it as part of a probate proceeding? That's Title VIII, and Chapter 8-9 addresses the probate courts. And certain of the case law that we cited in the briefing, Your Honor, they're all called Glassie v. Doucette, show the interplay between the probate court and the superior court. It's gone back and forth. There's a decision from Judge Van Coogan in the record where he recites the long back and forth as to how the probate matter has gone among the case. If I've understood you correctly, you're saying that it would be wrong to think of the probate exception to federal court jurisdiction as being only to the probate court to the extent the superior court exercises probate jurisdiction. It would also extend to the probate jurisdiction of the superior court. Is that correct? That is correct, Your Honor. OK. And so let me rephrase the question in two parts. First, are there such claims that would fall outside of the probate jurisdiction of either the superior court or the probate court, which have been asserted in this federal action? No, not that I've seen. No. All right. So even if in theory such claims, actually, I don't know where they could be brought in the Rhode Island court system. But even if in theory there was another place, that isn't where these types of claims could be brought. OK. That's time. All right. Do you have any wrap up comment? I would just the district court was correct. The probate exception applies here. The case was properly dismissed and we respectfully ask that that decision be affirmed. OK. Further questions from my colleagues? No. OK. Thank you very much. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.